*Formatted for Electronic Distribution*                                                                                                    *For Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
September 28, 2012

_____

**In re:**
    **Geoffrey David Muther and**                                              Chapter 13 Case
    **Kathy Doris Muther,**                                                             # 12-10029
        **Debtors.**
_____

**Geoffrey David Muther and**
**Kathy Doris Muther,**                                                                    Adversary Proceeding
        **Plaintiffs,**                                                             # 12-1002
       v.
**CitiMortgage, Inc., Fidelity Mortgage**
**Of NY, A Division of Delta Funding**
**Corporation, Mortgage Electronic**
**Registration Systems, Inc.,**
        **Defendants.**
_____

*Appearances:*

| | | |
|---|---|---|
| *Michelle M. Kainen, Esq.* | *Shannon A. Bertrand, Esq.* | *Andrew S. Canella, Esq.* |
| *Kainen Law Office, P.C.* | *Kenlan, Schweibert, Facey & Goss, P.C.* | *Bendett & McHugh, P.C.* |
| *White River Junction, VT* | *Rutland, VT* | *Farmington, CT* |
| *Attorney for Plaintiffs* | *Attorney for Defendants* | *Attorney for Defendants* |

**MEMORANDUM OF DECISION**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,**
**DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT,**
**AND DENYING DEFENDANT CITIMORTGAGE'S MOTION FOR SANCTIONS**

       The Plaintiffs commenced this adversary proceeding with the filing of a complaint to determine the nature, extent, and validity of a lien on their real property (doc. # 1). The Defendants filed a motion to dismiss (doc. # 10), the Plaintiffs filed an objection (doc. # 16), and the Defendants replied (doc. # 17). The Defendant CitiMortgage filed a motion for sanctions (doc. # 15), and the Plaintiffs filed an objection (doc. # 18). On May 31, 2012, the Court entered an order denying the Defendants' Rule 7012(b)(6) motion to dismiss adversary proceeding, setting a schedule for adjudication of the motion to dismiss and the objection to the motion to dismiss as cross-motions for summary judgment, pursuant to Rule 7012(d), and deferring a ruling on the motion for sanctions (doc. # 19). The parties filed a joint statement of undisputed facts (doc. # 21), supplemental memoranda of law (doc. ## 22, 23), and reply memoranda of law (doc. ## 24, 25). The matter is fully submitted.

1

## JURISDICTION

This Court has jurisdiction over this adversary proceeding and the instant motions pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), over which the Court has authority to enter a final order on the merits.

## UNDISPUTED MATERIAL FACTS

In the instant proceeding, the parties have acknowledged that the following facts are both material and undisputed:

1. At all times relevant to this proceeding the Plaintiffs were married to each other.
2. On or about July 15, 1992, Geoffrey Muther acquired his ownership interest in the subject property in Baltimore, Vermont by quitclaim deed (the "July 15, 1992 quitclaim deed") (a copy of which is attached to the complaint as exhibit 1). Doc. # 1, ¶ 10.
3. Kathy and Geoffrey Muther ("Mrs. Muther" and "Mr. Muther," individually; "Plaintiffs," collectively) resided in the property prior to this conveyance, since sometime in 1991. Doc # 16-1, ¶ 2.
4. On October 17, 1997, the Plaintiffs signed a quitclaim deed (the "1997 Conveyance") from the two of them to Mr. Muther and his heirs and assigns, for the purpose of merging the two parcels of land that comprise the property into a single parcel (the combined parcel is hereinafter the "Property") (a copy of which is attached to doc. # 16 as exhibit 2).[1] See doc. # 10, at p. 4, n. 2; doc. # 16, at p. 4
5. On or about July 26, 2007, the Plaintiffs both signed a note in favor of Fidelity Mortgage of NY, a division of Delta Funding Corporation ("Fidelity") (a copy of which is attached to the complaint as exhibit 3). Doc. # 1, ¶ 12.
6. On or about July 26, 2007, Mr. Muther signed a mortgage deed on the Property in favor of Fidelity (the "2007 Fidelity Mortgage") (a copy of this mortgage deed is attached to the complaint as exhibit 2). Doc. # 1, ¶ 11.
7. Mrs. Muther did not sign the 2007 Fidelity Mortgage. Doc. # 1, ¶ 13.
8. At the time the 2007 Fidelity Mortgage was signed, the Plaintiffs were married and residing at the Property. Doc. # 1, ¶ 14.
9. The Plaintiffs have resided together at the Property for more than 20 years. Doc # 16-1, ¶ 9.
10. The Plaintiffs consider the Property to be their homestead and have during all times relevant to this proceeding. Doc. # 1, ¶ 15.
11. CitiMortgage, Inc. is the current servicer of the loan secured by the Property. Doc. # 1, ¶ 16.

---

[1] The July 15, 1992 quitclaim deed concerns the transfer of only one of the two parcels combined in the 1997 Conveyance. The record is silent as to the origin of Mr. Muther's ownership of the other parcel.

12. MERS is the nominee for the lender, its successors and assigns on the mortgage deed attached to the complaint as exhibit 2. Doc. # 1, ¶ 17.

Stip. Joint Stmnt. Undisp. Facts for Purposes of Adjud. of Mtns. for Summ. J. (doc. # 21).

## QUESTIONS PRESENTED

This adversary proceeding presents four legal questions. First, under Vermont's homestead laws, must a spouse have a homestead interest in the property in order to be a necessary party to any conveyance of the homestead property? Second, under Vermont's homestead laws, may a spouse's homestead interest be extinguished, waived, or transferred, and deprive her of the right to challenge an otherwise voidable lien? Third, if so, do the terms of the 1997 Conveyance or Mrs. Muther's subsequent actions preserve or restore her homestead interest and hence revive her ability to challenge the 2007 Fidelity Mortgage? Fourth, is the Defendant, CitiMortgage, entitled to sanctions?

## EACH PARTY'S POSITION

The Plaintiffs focus on the protections afforded spouses under 27 V.S.A. § 141. They argue that Mrs. Muther need not have a homestead interest in the Property in order to be protected under § 141(a) from the conveyance of homestead property by her spouse. The Plaintiffs assert that whether or not Mrs. Muther can claim a homestead interest is not at issue in this adversary proceeding, as the sole issue is whether the mortgage is valid under § 141(a). The Plaintiffs also argue that the intent of the quitclaim deed is clear from its face: the Plaintiffs simply wished to merge the two parcels, nothing more and nothing less. The Plaintiffs point to the Vermont Supreme Court case, In re Mainolfi, 2005 VT 61, 178 Vt. 588, 878 A.2d 287 (2005), for support of their position that Mrs. Muther could not have transferred the inchoate homestead interest she held at the time of the 1997 Conveyance. Additionally, the Plaintiffs argue that the transfer was to Mr. Muther's "heirs," and Mrs. Muther is one of Mr. Muther's legal heirs. Finally, the Plaintiffs assert that even if Court holds that Mrs. Muther must have a homestead interest to claim protection under § 141(a), they should prevail because subsequent to the 1997 Conveyance Mrs. Muther accrued and acquired a new inchoate homestead interest in the Property through her financial contributions toward property improvements, the mortgage debt, taxes, and insurance.

The Defendants argue that Mrs. Muther must have a homestead interest as defined in 27 V.S.A. § 101 in order to avail herself of the protections afforded under § 141(a). They assert that a provision in the Vermont homestead statute enacted after the mortgage was executed, § 141(d), applies retroactively and compels the Court to find that Mrs. Muther relinquished her homestead interest in the 1997 Conveyance. Finally, the Defendants urge the Court to find that the 1997 Conveyance did not reserve a homestead and that none of her conduct subsequent to the 1997 Conveyance imbued her with homestead rights.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006). If the nonmoving party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex Corp., 477 U.S. at 323–25 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"); see also Tufariello v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

The Court finds there are no material facts in dispute and therefore summary judgment is proper.

## DISCUSSION

### Terms of the 1997 Conveyance

The salient terms of the transfer are straightforward. Mr. Muther held title to two separate parcels. In the 1997 Conveyance, Mr. Muther and Mrs. Muther signed a quitclaim deed in favor of Mr. Muther alone that provided as follows:

> TO HAVE AND TO HOLD, all our right and title in and to said quit-claimed premises, with the appurtenances thereof, [to Mr. Muther], and his heirs and assigns forever,
>
> AND FURTHERMORE, we, [the Plaintiffs], do for ourselves and our heirs, executors and administrators, covenant with [Mr. Muther], and his heirs and

4

> assigns, that from and after the ensealing of these presents, we [the Plaintiffs], will have and claim no right, in, or to the said quit-claimed premises except as aforesaid.

The 1997 Conveyance deed described the purpose of the conveyance as follows:

> The purpose of his deed is to merge the above two referenced parcels into one parcel which may not be subdivided except in accordance with State and local rules and regulations.

See Pls.' Obj. to Mtn. to Dismiss (doc. # 16-3).

## Pertinent State Statutes

The Plaintiffs and the Defendants agree that the Vermont homestead statutes govern the outcome of this adversary proceeding, but disagree about how those statutes should be interpreted and applied to the instant facts. Three sections of Title 27 guide the Court's analysis. The first is § 101, which describes the scope and nature of a homestead interest in Vermont:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101. The vesting of a homestead interest upon death of one of the co-owner spouses is explained in § 105:

> If a person dies leaving a surviving spouse, his or her homestead to the value aforesaid shall to and vest in the surviving spouse without being subject to the payment of debts of the deceased, unless legally charged thereon in his or her lifetime; and the surviving spouse shall take the same estate therein of which her husband or his wife dies siesed. The probate division of the superior court in which the decedent's estate is pending shall set out such homestead to the surviving spouse.

27 V.S.A. § 105. However, the key statutory section for purposes of this litigation is § 141. This law begins by setting out the longstanding requirement that generally both spouses must join in any conveyance of a homestead property or interest:

> A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, <u>unless the wife or husband joins in the execution and acknowledgement of such conveyance</u>. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.

27 V.S.A. § 141(a) (emphasis added). This section was amended a few years ago to add a provision that proclaims that any conveyance of homestead property between spouses (or civil union partners) includes a conveyance of the grantor's homestead interest and, of great significance to this proceeding, the inclusion of the homestead interest in any such conveyance applies to transfers past and future:

5

> Notwithstanding anything to the contrary in this section, a spouse or civil union partner may convey his or her respective homestead interest to the other spouse or civil union partner prior to the time the homestead right vests, thereby divesting the grantor of any homestead interest in the property. <u>A conveyance of homestead property between spouses or civil union partners shall be deemed to include a conveyance of any homestead interest. This section shall apply retroactively,</u> except that it shall not affect a suit begun or pending as of July 1, 2008.

27 V.S.A. § 141(d) (emphasis added).

### Does 27 V.S.A. § 141(a) Require that Mrs. Muther Have a Homestead Interest in Order to be a Necessary Party to the Mortgage on the Homestead Property?

The Plaintiffs do not assert that Mrs. Muther is entitled to a homestead interest under 27 V.S.A. § 101. <u>See</u> Pls.' Suppl. Mem. of Law (doc. # 22). Rather, they argue that under § 141(a) the 2007 Fidelity Mortgage is unenforceable because Mrs. Muther did not sign it. The Defendants counter that a homestead interest under the Vermont homestead statutes is a prerequisite to asserting the rights created by § 141(a). <u>See</u> Defs.' Suppl. Mem. of Law (doc. # 23). The Defendants' interpretation of the scope of protections created by § 141(a) is correct. This provision is located in the "Estates of Homestead" chapter within the Vermont statutes and deals with the conveyance of "[a] homestead or an interest therein . . . ." Moreover, Vermont case law has consistently applied this provision to void mortgages or conveyances where the spouse who did not sign the deed held a homestead interest. <u>See</u> <u>Estate of Girard v. Laird</u>, 159 Vt. 508, 510–13, 517, 621 A.2d 1265, 1266–1268, 1270 (1993); <u>Jakab v. Cendant Mtge. Corp. (In re Jakab)</u>, 293 B.R. 621, 624–626 (Bankr. D. Vt. 2003); <u>Pierce v. Pierce (In re Pierce)</u>, No. 02-11671, Adv. 03-01013, 2003 WL 22860034, *4–5 (Bankr. D. Vt. Dec. 1, 2003).

The requisite homestead interest necessary to invoke the protections of § 141(a) may arise because an individual has a fixed homestead interest in the property or an inchoate one. <u>See</u> 27 V.S.A. §§ 101 and 105. An inchoate interest would exist for a spouse not in title or for the holder of an entirety interest. In the instance of inchoate interests, vesting does not occur until the spouse outlives the legal owner – or the co-owner of the entirety interest – of the homestead property. <u>See</u> <u>In re Mainolfi</u>, 2005 VT 61, ¶ 6, 178 Vt. 588, 589, 878 A.2d 287, 289; <u>Jakab</u>, 293 B.R. at 625–26. The fact that Mrs. Muther was not a title owner at the time of the 1997 Conveyance and held only an inchoate interest is not decisive; the statute specifically protects spouses who are not title owners who nonetheless have a homestead interest. <u>See</u> 27 V.S.A. § 141(a); <u>see</u> <u>also</u> <u>In re Jakab</u>, 293 B.R. at 624–26.

Based upon the location of this provision, its express terms, and the case law construing it, the Court concludes that a homestead interest is an essential element of any claim under § 141(a) and that this provision does not protect a non-signing spouse from the conveyance of all real property, but rather protects that party only against the encumbrance or alienation of his or her homestead interest by the

6

spouse's conveyance of homestead property. See 27 V.S.A. § 141(a). Therefore, Mrs. Muther has the right to challenge the mortgage only if she holds a homestead interest in the Property.

**Was Mrs. Muther's Homestead Interest Extinguished and, If So, Did that Extinguish her Right to Challenge the Otherwise Voidable 2007 Fidelity Mortgage?**

The Vermont Supreme Court specifically addressed the question of a spouse's right and ability to transfer an inchoate homestead interest in In re Mainolfi, 2005 VT 61, 178 Vt. 588, 878 A.2d 287 (2005). In that case, the Vermont Supreme Court analyzed the interplay of 27 V.S.A. §§ 101 and 105, in the context of a series of property transfers between a husband and wife to determine if and when a transfer of homestead property includes a transfer of a homestead interest. Id. at ¶ 4, 588, 288. There, a husband and wife quitclaimed "all right and title" in real property located in Rutland, Vermont to their nephews, and reserved a life estate. Id. Two years later, the nephews and the husband quitclaimed all right and title to the wife, reserving a life estate for the husband. Id. Finally, on the same day as the second quitclaim, the wife executed a will that devised her estate to her nephews as tenants in common. Id. The husband outlived the wife by twenty-one days, and the estates of the deceased argued over the legal effect of the second quitclaim wherein the husband quitclaimed all his right and title in the property, and in particular, over whether he had conveyed his homestead interest. Id. at n.1. In ruling in favor of the husband's estate, the Mainolfi court determined that at the time the husband executed the second quitclaim deed, he had no homestead interest to transfer. Id. at ¶ 7, 589, 289. The homestead interest "vests in the surviving spouse simply by virtue of the decedent spouse's death . . . before a spouse's death, however, neither spouse can convey or waive the inchoate interest in the homestead." Id. at ¶ 6, 589, 289 (emphasis added). When the husband executed the second quitclaim deed, his homestead interest had not yet vested (because both spouses were still alive). The Supreme Court explained it this way:

> When [husband] executed the second quitclaim deed, his homestead interest had not yet vested, and thus he had nothing to transfer. The homestead interest is a statutory right, created by operation of law only at the death of a spouse. 27 V.S.A. § 105. The statute does not contemplate transfer or waiver of this interest before it vests. Therefore, [husband] did not convey, by the second quitclaim deed, his homestead interest to [wife].

Id. at ¶ 7, 589, 289. As a result of this interpretation, the Vermont Supreme Court held that the husband's estate was entitled to a claim of homestead interest in the real property. Id. at ¶ 1, 588, 288.

The Vermont Supreme Court reached two conclusions in Mainolfi that are critical to the instant dispute. It held that Vermont's homestead laws, first, do not contemplate a waiver of the homestead interest, and second, do not allow a spouse to transfer a homestead interest that is inchoate. Applying Mainolfi to the instant facts, the Court finds that Mrs. Muther could not have conveyed her homestead interest in the 1997 Conveyance because it was an inchoate interest at the time, Mrs. Muther would have still held a homestead interest at the time her husband executed the 2007 Fidelity Mortgage deed, and

Mrs. Muther would have been a necessary party to that mortgage under 27 V.S.A. § 141(a). Thus, the 2007 Fidelity Mortgage would have been voidable. Pursuant to the Vermont Supreme Court's decision in Girard, it was "ineffective with respect to the spouse who did not join it and [could have been] set aside by that spouse unless the homestead interest is otherwise extinguished." Girard, 159 Vt. at 517, 621 A.2d at 1270; see also Charter One Bank v. Estate of Spillane, 174 Vt. 490, 491–92, 807 A.2d 452, 453–54 (2002) (finding that subsequent events could extinguish an inchoate homestead interest and deprive a spouse from later challenging an otherwise voidable transaction). Therefore, if § 141(a) were the only statute applicable to the 1997 Conveyance and the case law cited above were still controlling precedent, then Mrs. Muther would have held a homestead interest in the Property on the date of the 2007 Fidelity Mortgage, and the absence of her signature on the mortgage deed would require this Court to find the Defendant's mortgage inoperable this adversary proceeding. However, in 2007, in what appears to be a direct response to Mainolfi, the Vermont Legislature enacted a new subsection to the homestead laws, 27 V.S.A. § 141(d),[2] which changes the outcome here.

In abrogating the holding of Mainolfi, the Vermont Legislature declared in 27 V.S.A § 141(d) that a spouse may convey his or her homestead interest prior to the time that it vests, relinquishing his or her homestead interest. Under this new statute, a conveyance of homestead property between spouses is deemed to include a conveyance of any homestead interest held by the transferor. Additionally, and crucial to this decision, the legislature stated this newly enacted subsection was retroactive, with the only exception being that it would not affect a suit begun or pending as of July 1, 2008.

It is the bundle of rights available on the date a party challenges the validity of a mortgage, rather than on the date the mortgage was executed, which controls. See Charter One Bank v. Estate of Spillane, 174 Vt. at 491–92, 807 A.2d at 453–54 (noting that if a surviving spouse wished to challenge irregularities in a mortgage transaction she should have done so prior to the divorce, which operated to extinguish her interest, making the transaction no longer voidable). Here, Plaintiffs did not challenge the validity of the 2007 Fidelity Mortgage until after passage of § 141(d). Therefore, if the retroactivity of this provision is enforced, the new legislation would operate to extinguish Mrs. Muther's homestead interest and deprive her of the right to challenge the validity of the 2007 Fidelity Mortgage.

---

[2] The legislative history reveals that 27 V.S.A. § 141(d) first appeared as an amendment to a bill concerning a different, unrelated statutory section. The original bill, first proposed in the Senate, passed the Senate on April 12, 2007. It then went to the House and, on April 17, 2007, was sent to the House Committee on the Judiciary. The amendment to the bill was added in committee and presented to the House for consideration on April 22, 2008. The amendment dealt with precisely the same subject matter as Mainolfi, i.e., conveyance of property between spouses and the resulting effect on the homestead interest. The amended bill passed the House on April 23, 2008. The Senate approved the amended bill (which by then encompassed four different statutory sections) on May 1, 2008, the bill was sent to the Governor on May 22, 2008, and the Governor signed it on May 28, 2008. See Discharge of a Mortgage by an Attorney, Ability to Convey Homestead Interest, and Validation of Mortgage Discharges, S.0171, 2007–08 Leg. Sess. (Vt. 2007-08), http://www.leg.state.vt.us/database/status/summary.cfm?Bill=S%2E0171&Session=2008 (bill as introduced and as amended available at website); see also 27 V.S.A. § 141.

8

It is among the most settled principles of law that retroactive application of statutes is disfavored. The Supreme Court of the United States has noted, "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf v. USI Film Products, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L. Ed.2d 229 (1994) (citing Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 842–44, 855-56, 110 S.Ct. 1570, 1579–1581, 1586-1587, 108 L. Ed.2d 842 (1990) (Scalia, J., concurring)). Furthermore, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Id. (citing Gen. Motors Corp. v. Romein, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992) ("Retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions"). As the Second Circuit has stated:

> [i]n view of the values the presumption against retroactivity is designed to serve, it is not surprising that it has most frequently been applied in cases involving contractual or property rights, where 'predictability and stability are of prime importance,' [Landgraf] at 271 & n. 25, 114 S. Ct. 1483, and especially to cases involving private rights, where it is particularly undesirable – unfair even – to undermine good-faith reliance on established legal rules, see [Republic of Austria v. Altmann, 541 U.S. 677, 696, 124 S. Ct. 2240, 159 L. Ed.2d. 1 (2004)].

City of New York v. Permanent Mission of India to United Nations, 618 F.3d 172, 195 (2d Cir. 2010). Retroactive laws "frequently upset settled expectations by imposing burdens and disabilities with respect to completed transactions and actions . . . [a]nd they may undermine rule-of-law values that enable people to know what the law is, and to have confidence about the legal consequences of their actions." Id. (citations omitted).

In Vermont, as a safeguard against unintended retroactive application of statutes and amendments, the longstanding rules of statutory construction discourage retroactivity. 1 V.S.A. §§ 213 and 214. Since 27 V.S.A. § 141(d) amends the statute by adding to the pre-existing § 141, the relevant rule of construction is:

> (b) the amendment or repeal of an act or statutory provision, except as provided in subsection (c) of this section, shall not:
> * * *
> (2) Affect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal;
> * * *

1 V.S.A. § 214(b). Section 214(b) operates to protect vested and inchoate rights. Lillicrap v. Martin, 156 Vt. 165, 181–82, 591 A.2d 41, 50 (1991) (Morse, J., concurring); In re Skjetne, 213 B.R. 274, 277 (Bankr. D. Vt. 1997). However, it is absolutely clear that § 214 does not apply if the legislature, by the express

9

language of the statute or amendment, makes its retroactive intent clear. Mass. Mun. Wholesale Elec. Co. v. Vermont, 161 Vt. 346, 359, 639 A.2d 995, 1004 (1994); First Quality Carpets, Inc. v. Kirschbaum, No. 2010-312, 2012 VT 41, ¶ 12–13, 2012 WL 1918404, --- A.3d --- (May 17, 2012) (citing 1 V.S.A. § 101 and emphasizing that rules of construction are to be observed "unless such construction is inconsistent with the manifest intent of the general assembly or repugnant to the context of the same statute"). The Vermont Supreme Court has long held it will construe a statute retroactively only where the statute is unquestionably intended to be retroactive, "[w]e have early held that, absent the 'most clear and unequivocal language,' a statute affecting legally existing rights should not be construed retrospectively." Northwood AMC Corp. v. Am. Motors Corp., 139 Vt. 145, 148, 423 A.2d 846, 848 (1980) (citing Briggs v. Hubbard, 19 Vt. 86, 90–91 (1846); see also Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471–72 (1988) ("[t]hus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.") (citations omitted)).

It is against this backdrop that this Court must interpret 27 V.S.A. § 141(d). This recently enacted statute specifically applies to a situation where spouses or civil union partners convey homestead property between themselves, and determines the effect such conveyances have upon the homestead rights of the two parties. The critical phrase, "[t]his section shall apply retroactively, except that it shall not affect a suit begun or pending as of July 1, 2008," is so clear and unequivocal that, under the rules of statutory construction, the Court is bound to conclude that the legislature intended for § 141(d) to be applied retroactively.[3]

Here, Mrs. Muther joined in the 1997 Conveyance to convey the homestead property to Mr. Muther. Her signature was required by the terms of 27 V.S.A. § 141(a) for the 1997 Conveyance to be a valid conveyance of property by a married owner. The Plaintiffs claim to have executed the 1997 Conveyance for the purpose of merging two parcels into a single parcel. The record is clear, and the Defendants do not dispute, that this was the purpose of the transfer. Under the express terms of § 141(d), however, this transfer between spouses "shall be deemed to include a conveyance of any homestead interest." 27 V.S.A. § 141(d) (emphasis added). That mandate gives no weight to the parties' intent. The statute further directs that such a result "divest[s] the grantor of any homestead right in the property." Id. It contains no language authorizing courts to exercise discretion in the application of the provision based upon the facts of individual transactions.

---

[3] It is not the role of this Court to assess the wisdom of statutes enacted by the state legislature. The instant case demonstrates quite clearly the dramatic impact of applying the law retroactively. Section 141(d) contains no language limiting its temporal reach back and therefore could impact contractual and private property rights in conveyances between spouses and civil union partners executed decades back – conveyances that were made and entered into in consideration of the settled law at the time.

10

Having determined that Mrs. Muther must have a homestead interest to claim the protections of 27 V.S.A. § 141(a), and that § 141(d) applies retroactively to divest Mrs. Muther of any homestead interest, the Court must conclude that Mrs. Muther no longer has the ability to challenge the 2007 Fidelity Mortgage. Therefore, by operation of § 141(d), the 2007 Fidelity Mortgage is not subject to avoidance under § 141(a).

### Is Mrs. Muther's Homestead Interest Preserved or Restored by Her Status as a Legal Heir of Mr. Muther or by Virtue of Her Contributions to the Property?

The Plaintiffs acknowledge that strict construction of the statute might result in the conclusion that Mrs. Muther has no right to challenge the 2007 Fidelity Mortgage, and present three alternative arguments in support of their position. First, the Plaintiffs argue that even if the Court holds that Mrs. Muther must have a homestead interest to claim protection under § 141(a), Mrs. Muther has accrued and acquired a new inchoate homestead interest in the property, subsequent to the 1997 Conveyance, through her financial contributions toward improvements to the Property and the mortgage, tax, and insurance obligations. However, the Plaintiffs cite no case law to support this argument and the Court finds it to be without merit.

Second, the Plaintiffs argue that the Court must look to the express language of the 1997 Conveyance, acknowledge the stated intent was to merge two parcels into one, find that the grantors did not intend the conveyance to extinguish Mrs. Muther's homestead interest, and hold that Mrs. Muther's homestead interest therefore survives the conveyance. The Plaintiffs are correct that "in interpreting a deed, we look to the language of the written instrument because it is assumed to declare the intent of the parties." Kipp v. Estate of Chips, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999). However, the Court must balance this rule of construction for interpreting a deed against the direct instruction from the legislature regarding conveyances of homestead property between spouses or civil union partners. The plain language of § 141(d) states that the provision applies retroactively and includes no exception based upon the intent of the parties. Vermont lawmakers could have granted a broader exception, excluded conveyances where the grantor did not intend to include a conveyance of homestead interest, or given courts the discretion to inquire as to the parties' intent with respect to the homestead interest. They did not do so.

Last, the Plaintiffs argue that since the transfer was to Mr. Muther's "heirs and assigns forever," and Mrs. Muther is one of Mr. Muther's legal heirs, the grantors were actually conveying some interest in the Property back to Mrs. Muther. In the Plaintiffs' words, it was a "circular transfer" that conferred a new inchoate homestead interest on her. See Pls.' Obj. to Mtn. to Dismiss, p. 4 (doc. # 16). The Plaintiffs fail to cite any case law for this theory. Section 141(d) makes it crystal clear that a conveyance of homestead property divests the grantor spouse of his or her homestead interest. The Court will not find

11

that vague language – language that many would consider "boiler plate" deed language – is sufficient to defeat the clear directive of § 141(d).  Application of this theory could eviscerate the intent of the Vermont Legislature as articulated in § 141(d).

### Is the Defendant CitiMortgage Entitled to Sanctions?

The Defendant CitiMortgage filed a motion seeking sanctions under Fed. R. Civ. P. 11, made applicable to this proceeding through Fed. R. Bankr. P. 9011.  That Rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well ground in fact, legally tenable, and not interposed for an improper purpose."  Berger Indus., Inc. v. Artmark Prod. Corp. (In re Berger Indus. Inc.), 298 B.R. 37, 40–41 (Bankr. E.D.N.Y. 2003).  "In order to impose a Rule 9011 sanction, a bankruptcy court must find that an attorney has submitted a claim that has no chance of success under existing precedents and that fails to advance a 'reasonable argument to extend, modify, or reverse the law as it stands.'"  In re Matter of Cohoes Indus. Terminal, Inc., 931 F.2d 222, 226 (2d Cir. 1991) (citing Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir 1990), cert. denied, 498 U.S. 1028, 111 S. Ct. 681, 112 L. Ed.2d 673 (1991).  Defendant CitiMortgage contends that sanctions are warranted because a thorough title search would have alerted the Plaintiffs' attorney to the existence of the 1997 Conveyance, and a simple inquiry into the relevant Vermont homestead laws, more specifically, 27 V.S.A. § 141(d), would have informed the attorney that the 1997 Conveyance divested Mrs. Muther of any interest in the Property.  See Def.'s Mtn. for Sanctions (doc. # 15).  The Plaintiffs' attorney counters that she made a diligent inquiry into the facts and allegations in this matter and examined the 1997 Conveyance, but her interpretations and conclusions regarding § 141(a), and the import placed on protection of the homestead found in Vermont jurisprudence, persuaded her the complaint was justified.  See Pls.' Att'y Obj. to Mtn. for Sanctions (doc. # 18).  Sanctions are only warranted in response to conduct that is egregious and objectively improper.  While Plaintiffs' arguments were not sufficient to prevail, they were certainly not frivolous.  Moreover, there was no case law directly on point that would have denied them relief, and there were many questions of statutory construction.  Under the facts and arguments presented, in the context of the controlling law, the Court finds the Plaintiffs' complaint raised legitimate arguments.  Therefore, the Court declines to impose sanctions.

### CONCLUSION

Based upon the foregoing analysis the Court reaches three conclusions that determine the outcome of this adversary proceeding: First, under Vermont's homestead laws, a spouse must have a homestead interest in order to be a necessary party to any conveyance of the homestead property and to be entitled to challenge the validity of a mortgage on or conveyance of homestead property.  Second, under Vermont's homestead laws, a spouse's homestead interest may be extinguished, waived, or transferred resulting in

the inability to challenge an otherwise voidable lien. Third, neither the terms of the 1997 Conveyance, nor Mrs. Muther's post-conveyance conduct, are sufficient under Vermont's homestead law or pertinent jurisprudence to restore or revive her homestead interest in the Property. Therefore, Mrs. Muther's failure to join the 2007 Fidelity Mortgage is not fatal to the enforceability of that mortgage. Accordingly, the Court denies the Plaintiffs' challenge to the validity of the 2007 Fidelity Mortgage and determines that the Defendants are entitled to judgment as a matter of law.

Additionally, the Court finds the Defendant CitiMortgage's request for sanctions to be without merit.

This constitutes the Court's findings of fact and conclusions of law.

September 28, 2012  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

13